We'll hear from you, Mr. Mendelsohn. May it please the Court, the easiest way to dispose of this facial challenge is to hold that there is at least one obvious constitutional application of the request to examine statute. Under Texas Business Organizations Code 12.259, an RTE subpoena recipient will receive pre-compliance review if the Attorney General seeks an injunction to enforce the subpoena at issue. In such a proceeding, Spirit would suffer no additional consequences. Spirit has offered no argument as to why that procedure is unconstitutional, so its facial challenge fails. Why do you call it a subpoena because it doesn't meet the definition that's in your statute? I'm not sure that that's truly a material problem for the purposes of this case because I think all the parties agree that the administrative search exception under Patel applies. So I think the issue is simply, is there a form of pre-compliance review regardless of how the document is labeled? But nonetheless, the document that Spirit received was a document that said, please produce the following list of documents. That's certainly — Has any Texas court called this visitation statute, RTE, a subpoena statute? I don't think — well, I don't think so, and that's because there's only ever been two challenges relating to an RTE, at least since Patel was decided. One, of course, is this case, and one, of course, was the Annunciation House case. But so you are or you aren't saying, statutorily, it triggers 176 protections? No, it does trigger 176. And that includes 176.6d? Yes. If a recipient objects, the documents need not be shown but for a court order? That's — under the Erie doctrine, that is how the Alavone v. Fisher case in the Austin Court of Appeals applied that procedure to something very similar. And of course, what this Court has explained is that it defers to an intermediate appellate court. But I guess, is that your position to us and presently in the Texas Supreme Court and Annunciation House, that we can — we should, to constitutional avoidance, delete the word immediate and insert the words after judicial review, equivalent to 176.6d, that any recipient of an RTE can say to the field inspector, stop, I object, you can't see the documents unless you get a court order? Well, we've certainly made that argument in the Annunciation House case, yes. As to the second — yeah, that's in our brief in the Annunciation House case. As to the second — as to the second part of that, that is — that is how the only appellate court that has ever actually looked at something similar to this has decided that. So we think that at least under the Erie doctrine — and we have argued that in Annunciation House, which is, of course, in the Texas Supreme Court right now. I guess that gets me sort of — maybe I would start with just disability issues. Are you saying that these representations of yours mean that the case is moot, mean that the case has no adversity? Or maybe define to me your justiciability arguments. Are you saying they don't have an injury, or are there no justiciability arguments? No, we've made several justiciability — And what's the best non-justiciability argument? Well, I think the most important justiciability argument is that Spirit lacks standing to challenge this immediate compliance provision idea. And that's for several reasons. The first, of course, is that this court squarely held in In Re G that you have to have standing to challenge what it says each and every provision of a statute. And so when Spirit says we have standing to challenge the immediate compliance provision, that's just not correct, because Spirit initially — initially was given three weeks to comply with the subpoena and then was given all the way until — from May of 2024 all the way until December of 2024. But that sounds like an as-applied argument. And so I'm sure you're familiar with the portion I'll read to you from Patel. The constitutional applications that Louisiana — Los Angeles claims prevent facial relief here are irrelevant to our analysis because they do not involve actual application of the statute. So as I read Patel, you remember that portion. When there's a facial challenge, we're not looking as to whether in your grace you gave them three weeks. We're not looking to exigency. We're not looking to consent. We're just looking, could you — not will you — could you demand immediate production? I think these are two separate points about justiciability, and one is — one point, I think, is about justiciability, and one point is how do we interpret that statute in the first instance. And I want to be sure to separate those two things. The first is that nothing about Patel changes the Article III traceability requirement as to each provision of a statute. That's, I think, a separate point from how to interpret that statute. And as to Your Honor's question about how to interpret that statute, Spirit's argument is that, well, what we're really doing is invoking non-applications of the statute. That can't be correct. That violates at least three canons of statutory construction. The first two are in the Texas Code Construction Act, which is, one, a codified avoidance canon, but two — Well, I guess, yes or no that on its face only this statute violates the Fourth Amendment per Patel? No. We certainly don't. We certainly — Okay. But there's no PC. It requires immediate turnover. It does not. You're exposed to misdemeanor. You have a misdemeanor exposure. So I think there's two — I think there's at least two problems with those arguments. The first, on the misdemeanor exposure point, there's certainly no standing to raise that issue, because the attorney general has no power to initiate a criminal prosecution. But you could arrest. The attorney general expressly stated in the motion — But you can't — I don't — unless you have case law, you can't say, well, in this case — I mean, this is — that's turning the Fourth Amendment upside down. Trust us. Here, we're giving you, your words, grace. It's — the portion I read from Patel was, you've got to look at the statute alone. No. Well, again, I think this is conflating two separate points. One is standing, and one is how do we interpret it. Right. But I asked you facially, only looking at the standing, immediate disclosure, no probable cause — Immediate — No judicial mechanism for review that I see in the statute on its face. So let me answer that in two ways. The first is that this is a facial challenge. 12.259 is an application of the statute. It is — all it says is if somebody refuses to comply with a subpoena, the attorney general can seek an injunction. Even if the attorney general demands immediate compliance, let's say the attorney general goes to a corporation and says, here is an RTE, comply with it immediately, or else we're going to go to court and get an injunction, that is pre-compliance review. Well, no. What you said in Annunciation House, or else we're going to go and dismantle your organization. We're going to revoke your license. And this is a facial challenge, and so it was Spirit's burden to show that both of those things, both the Quo Warranto procedure and the 12.259 procedure, are unconstitutional. What if a staff member with the attorney general's office walks over to the officer of the company and brings with him somebody that has arrest power, and so he gives him the letter and the guy says, I refuse, and then the officer has a right to pick him up and haul him away, doesn't he? Well, again, I want to address the standing point as to that exact issue. And not only did we expressly tell a court in the district court in this case that we wouldn't do that, but more importantly, under footnote four of Clapper, and under A&R Engineering in this court, the court has explained that it is the plaintiff's burden to show that that's actual or imminent. It's not the attorney general's burden to show that we're not going to do that. Well, the case they cite that I didn't see you reply in the reply brief to was Franciscan Alliance. Are you familiar with that case? Yes. Okay. Which they rely on. And it has to do with, are they facing a credible threat? Exactly. And what case would say when they've got an RTE given to them, that's not even, it's not even a credible threat, that's an actual threat. Well, first of all, the RTE that's at issue in this case never mentioned anything about a criminal prosecution or an arrest. I think the court might be referencing one that was sent to a different entity and that was actually sent to the city. No, I'm just, how would you distinguish Franciscan Alliance? Because it talks about when the prosecutors in one case like Annunciation House say, yep, we're going to dissolve you. In another, they don't. They're facing a credible threat. They have an injury. Well, again, I think the problem is that there's at least four different facts that have occurred in this case that changed that. One is that we expressly said we're not going to do that. The state is certainly. Well, wait, wait, wait, right there. Because the district court made a finding that you refused to say you would stay this until the end of litigation. That's a fact finding. I didn't see that you objected to, and I don't see in your brief you saying that's a clear error. That's not correct. What the district court said was that we would not commit to not enforcing it. That is a different question from how that would be enforced. That's not correct. Okay. I don't understand that. The district court made a finding that you refused to stay till the end of litigation here. Stay the RTE enforcement. And RTE enforcement, of course, can mean many different things. We expressly said we're not going to arrest anybody. What we didn't say expressly was anything related to civil enforcement, and we haven't said anything about that point. Those are two different things.  I mean, the grace that you give can be revoked at any time, can't it? So I want to talk. First of all, the state is certainly. I mean, answer that first. No, and that's because when the state makes a statement in court as clear as nobody from spirit is getting arrested, we're not going to change our mind on something as clear as that. When the state makes a statement like that in federal court, the state is entitled to the presumption of regularity and the presumption of good faith. What's your best case for that? They can switch and choose if you're looking at entities like Catholic charities that are letting migrants in, you can say right now or we dissolve you. But then you're looking at a big company with lawyers like spirit. You can say, no, actually, we'll give you time and go ahead and get judicial review. What's the case that says that the attorney general can sort of play with the litigants like that? The attorney general is. I want to. What's your best authority to support the proposition you just made answering Judge Davis that what you say has such presumptive force that we have to accept it? Well, I think the answer to that goes to the burden. What's your best case for the proposition that case by case, you can reassure that some people get judicial review and other people don't. And therefore, we don't even have Article three jurisdiction. What's your case for that? Counsel? Well, I think I think the best answer that I can give is it was their burden to. I'm asking you for a case. Best of all, the case you cited in the brief. Do you have a case for what you just said beyond what we cited in the brief? I don't think so. Tell me the case you cited in the brief for that proposition for the presumption of. No, not the presumption of regularity that the attorney general can come into court as to one litigant and say, we won't enforce it. And then as to another, yes, we will. So I think that I don't know if there's a specific case that says that exact point, but what I'm referencing is footnote four of Clapper. And I think what footnote four of Clapper says is that it's their burden, not the not the defendant's burden, in this case, the attorney general's burden to disprove standing. It's their burden to point to affirmative facts, saying we think that A, B or C is going to happen in this case. I think I think all I'm really referencing is the burden of proof issue on standing. So on just just so I have the sequence of your arguments, on justiciability, you're saying we have no case in controversy because they don't have an injury? Is that? No, that's not at all. What is your standing argument? My standing argument is that there's different pieces of this case that there's no standing. We're not saying they're standing. You have to have standing for every claim and every claim. I understand that. So what claims do they have standing for as opposed to ones they don't? Sure. They don't have standing to challenge the immediate compliance provision and they don't have standing to challenge the criminal prosecution aspects of it because those are different pieces of the statute. You can't what NRAG expressly held was that you can't simply say, well, part of the statute could affect me. And so for that reason, I have standing to challenge all of it. That's what we're saying. We're saying there's no district attorney who's a party to this case. And for that reason, we can't challenge I think I understand that argument. I think to me, that's conflict that that's irreconcilable with Patel. But if one of it we'll we'll see. We'll see about that. So then on the merits, yes or no, this statute is violative of Patel without any rewriting by us? No, it's certainly not violative Patel because the eerie inquiry is how would the Texas Supreme Court interpret this statute today? And I want to make three points because I think what the court is referencing is the immediate compliance provision. No, I'm actually not concerned about timing. I'm concerned about process. Sure. In other words, when you say, well, they'll be able to get into court when they're fighting the quo warranto. That seems to me the Hobson's choice that you discussed or whoever did for Texas in front of the district court. I'm concerned about can they get 176 D protection instead of allowing inspection of any paper? They can say to you, no, go get a court order. And it sounds to me like you said, yes, they can. We think they can. The same that's the same verb you use in your brief. The attorney general admits indeed embraces the proposition. The RTE subpoena recipients may enjoy review before suffering penalties. But are you telling me that means they do get to enjoy judicial review before even turning over documents? Yes or no to that question? I think the answer has to be yes, and that's because there's only one Texas appellate court that's ever looked at this. So under the eerie doctrine, that's the only piece of evidence that we have out there. And I certainly understand what I said earlier, which is that there's only ever been two challenges to this statute. And of course, one is pending litigation in another court right now. So this is certainly I'm with you when you say yes. That's how I look at it. Now. Then I get to me. Are you saying to us you've mooted the case because you two are now on the same side? You're agreeing to exactly what they're asking for. We haven't. I don't think we've ever made a mootness. No, I know. So when you admit that any recipient of an RTE can always say no to the inspector. We need a court order before we show that. You tell me that is what has to occur. I think at the very least under the eerie doctrine, that has to be because there's only again. Well, don't look quizzical. You're representing the attorney general. Is that how the RTE statute has to work to conform to the Fourth Amendment? Yes or no? I think so. Okay. I think so. And again, if the court is concerned about this, there's one other application that's obviously constitutional that I opened with, but I see my time is up. No, keep going. And that's simply because putting all of these other issues to the side, a facial challenge has to mean unconstitutional in all applications. And so the court doesn't have to address how the Texas rules of civil procedures work or how the ultra virus cause of action works. All it has to say is there is one application here that is constitutional. It complies with Patel. It complies with this court's decision in Google versus Hood. And that's the only thing the court has to decide. I go ahead and ask you a few more. Could you add three minutes to each side? Sure. How do you pronounce it? Katropia? Katropia? And Alabone? I'm sorry? The 176 cases. The subpoena cases. Yeah. Alabone versus Fisher, I believe, is the name. Yeah. And our court interapplying that twice in Katropia, isn't that how it's pronounced? Oh, yeah.  The Texas Medical Board case. Right. Katropia v. Chapman. Yeah. Is that avenue to judicial review one you would think is the more regular and obvious one? Or did when you started out by saying it's actually an ultra virus suit, that's the more appropriate one for an RTE recipient? I think they could both work, but I think the ultra virus suit might be a little bit easier. But am I right that there's never been a Texas case which entertained and granted relief as ultra virus? When the request was to show documents, not for depositions. Not true. No? Okay. Because that's exactly what an enunciation house was. An enunciation house was an ultra virus suit. And we... No, no. You've got time. Yeah. You still have your rebuttal time too. So this is on pages three and 10 of the live petition, which is an enunciation house. This is not in the record, but the court can take judicial notice of it because it's on the Texas Supreme Court's website on their docket. On pages three and 10 of the live petition, enunciation house alleges that the suit that they brought in which they obtained a TRO and got summary judgment granted on constitutional claims, they say on those two pages that it was an ultra virus suit. And I want to be really clear about exactly what they said. They said enunciation house challenges general Paxton's ultra virus conduct and seeks only prospective declaratory injunctive relief with the well-established exception to sovereign immunity described in city of El Paso v Heinrich. That's the canonical Texas Supreme Court case, at least in modern times, that talks about the ultra virus. One problem with that is just still the word immediately. You don't have time to get to court if you have to do it immediate to the field. Enunciation house obtained a TRO in one day. One day. But that was your grace. You gave him a day. Well, even again, even if the court disagrees, if we're talking about the subpoena provision under 12.259, even if we say give us documents today, immediately in this one second or else we're going to go to court and bring a lawsuit, then spirit or enunciation house or anybody would have the ability to make any arguments in that court proceeding that they wanted. They could challenge the reasonableness. They can make any other fourth amendment arguments. They can make state law arguments. All of those things would be available in that procedure. And because this is in the subpoena procedure. Yes. Okay. But both Alabone and Katropia, those had to do with the Texas Medical Board's statutory subpoena authority. Correct? Yes. So the problem and the reason why the court said in the Chapman cases why the statute was unconstitutional is because someone from the Texas Medical Board took a document in and proceeded to physically go into an office and start grabbing documents and photocopying them. That's not at all what happened in this case, and that's certainly not something that even happened in the enunciation house case. How does a litigant have any assurance that he can get a TRO timely in order to avoid being hauled off to jail? Well I think there's a couple points. The first is under the injunctive suit provision that I was addressing, that issue wouldn't come up. The second point, I guess we could say on the arrest point, is under the facts of this case, and I see my time has again expired, but under the facts of this case, it would seem very unusual, I think, to arrest somebody that we can't even prosecute in the first place. And not only that, I mean our statements in court at the summary judgment were what our statements in court were. It seemed to be important to the court in Patel when they said, you know, if you refuse, then you can be arrested right on the spot. Right, exactly. That's exactly what Patel said, and what we're saying is there's so many applications of this statute in this facial challenge that could never come to that. Whether it's the 12259 procedure, whether it's the Quo Warento procedure, whether it's either of those procedures, that arrest on the spot isn't going to happen using either of those procedures. What would happen is that the Attorney General would file a lawsuit, and then Spirit could make any argument it wanted to under, for instance, Rule 781 of the Texas Constitution. So he may be waiting in jail while he does all that, too. Well, again, I think this just goes back to the same question about the Attorney General's pronouncements and their burden to show standing on the arrest point. I mean, it seems a little bit odd to say we would arrest somebody when the Texas Court of Criminal Appeals says we can't prosecute anybody. That does seem a little bit odd. You don't have any trouble bringing in somebody, will you, who does? Well, again, there's no district attorney who's a party to this case, and because of that, they can't make an argument about whether there is standing to enforce a criminal process. I see my time has very much expired at this point. I'm happy to answer— As long as you're getting asked questions, you get to keep going. Yes, Your Honor. Nobody in the Attorney General's office has arrest authority? There are people in the Attorney General's office and under the Code of Criminal Procedure that do, but we can't prosecute anybody, and so it would seem a little bit odd to suggest, well, we might arrest somebody if, in fact, we can't prosecute them. But also, this case has been going on for months. This started in May. It went all the way to December. During that entire period, no arrest occurred because we told them we're not going to do this, we're not going to do this. We gave them multiple extensions. We said in court that we weren't going to. It was never our burden to show standing. I think we've conclusively disproved standing as to make the actual arrest point. We're not saying there's no standing to bring this entire case. I want to be clear about that. We're saying there's no standing for different specific provisions. Okay. Thank you, counsel. You have your full rebuttal time. Mr. Martins? Thank you, Your Honors. May it please the Court, Matthew Martins of Wilmer, Cutler, Pickering, Hale, and Dorr for the Appelee Spirit Air Systems. Every recipient of an RTE is, under the plain language of the statute, faced with this unconstitutional choice. Comply immediately, immediately permit inspection, or risk sanction, at a minimum risk sanction, for failure to do so. That is precisely what the court in Patel said is the choice that cannot be put to a party. When I brought this to attention, you heard him say, well, that's not yet addressing the standing issue. And there's no injury in fact, either because you were given a lot of time, and here you are in court, federal circuit court, a lot of times passed. I mean, that's their primary argument, correct? And therefore, we're looking right now at a constitutional application. So I think we have to back up to what the state of affairs was prior to bringing suit. Because that's the situation that was presented to my client. I get that instead of us seeking a TRO, they agreed to pause for some period of time while this litigation was ongoing. But that's exactly our point, that unless and until we brought a constitutional challenge to the statute, the situation my client faced is the situation that everyone who receives an RTE faces. Their choice is, immediately permit inspection, or risk sanction for failure to do so. And the sanctions are arrest at minimum, and or dissolution, revocation of the license. Those are the two primary sanctions. Well, I think that they too easily brush aside the criminal sanction. They say, why would we arrest if we can't prosecute? Let's back up to March 28th, the first RTE that was served, they misnamed it, they said Spirit Holdings instead of Spirit Aerosystems. That one threatened criminal sanction. So they come in here now and say, oh, we can't prosecute. But until we brought a lawsuit, they had never issued an RTE that didn't threaten criminal sanctions. The RTE in this case threatened criminal sanctions. It was only after we brought this lawsuit that they backed down on that and reissued a new RTE, striking out that language. But this is exactly my point. The only thing that's changed their conduct is this lawsuit. The situation my client faced prior to this lawsuit, the live situation they faced was this. In March, they received an RTE that threatened criminal sanctions. If inspection was not immediate, or was there some delay? It allowed, it purported, so it's interesting that it talked about producing documents. The statute doesn't even talk about producing documents, and it talked about producing them within 20 days. One month earlier, one month before my client received that RTE, was the Annunciation House situation, in which Annunciation House, when granted one day of grace, filed suit. The response was a petition to revoke their registration. That was the live situation that my client faced in March. Am I right? Your argument is the statute on its face requires immediate disclosure or bad things happen. In cases like Humble Oil, say, immediate disclosure or bad things happen. Annunciation House faced bad things happen. Does it matter, though, for the purposes of Article III jurisdiction, that in your case, the first RTE you got didn't say immediate? It said 20 days. I don't think that that solves the problem for a number of reasons. So first of all, they've said that they can revoke that at any time. What the statute requires, what my client was statutorily obligated to do, was immediately permit. Now, they have said, hey, don't worry, we won't enforce that, we'll wait. But what we saw was that literally the last person we know of who they said that to, Annunciation House, within the grace period, they did not after the grace period, within the grace period filed a lawsuit, immediately said, we take the grace away because you dared challenge. That backs into the second point they're making, which is Annunciation House was able to file the lawsuit. Now they're already in the Supreme Court of Texas. So they had their ultra-virus injunction ready. So the RTE was withdrawn in that case, and the Texas Supreme Court has not ruled on it because it's been mooted, as they argued. The issue and the challenge raised, and the challenge that the trial court ruled on, was not to the particular reasonableness of an RTE, which is of course what we're entitled to under Patel. What the court ruled on was its facial unconstitutionality. We accept that ultra-virus actions are allowed to challenge the constitutionality of a statute. What we've said is you're not allowed to bring an ultra-virus action to challenge the particular application, the reasonableness, the exercise of discretion, and what the trial court at Annunciation House ruled was that the statute was facially constitutional. I said that's not what we're here arguing we're entitled to under Patel. We're entitled under Patel to bring a challenge challenging the reasonableness of a particular request to examine. And what we saw was when someone raised that challenge, the immediate response, even brought one day later, by the Attorney General, is immediate, means immediate, I mean, that's what they told the court, that immediate means immediate, and that there is no flexibility on it, and you must interpret it even if it reaches unreasonable and unjust conclusion. What about his clear as day statement to us, and when I read the hearing below, it was also to the magistrate, so I'll quote from that, page 49 of the transcript. This is Texas. If there is no exigency, we don't think we can just give, you can just give us the documents right now without precompliance review. So you heard him today say, in both situations, they're sort of giving you exactly what you're asking for. To two federal judges, or four of us, they've said if you get the RTE, they cannot compel production until you've had the opportunity to challenge that, object in court, and get a court order. I think that's what Texas is saying. As I understand it, they're now saying that Rule 176 applies to RTEs. Yes. I think there's a couple of problems. He said that clearly twice. I've heard him as well, and I think that there's several problems with that. One, I just would note that even in the revised RTE that we got on May 13th, there was no reference to 176. Even then, they weren't putting anybody on notice to this. This is a litigation position that they've now drummed up. The question is, does it, can they do that, consistent with the statute, and does it provide us the protection? So let me answer those questions. What they want to say is that immediately is overridden by 176, and the problem with that is 176 is about subpoenas. There's no reference, the entirety of it, 176.1, talks, if you read 176.1, it talks about you have to have, name the court which issued the subpoena. You have to name, you have to include the caption, the case number. It talks about having a, filing a proof of service for the subpoena. So there's no case ever holding that a request to examine is a subpoena, and 176 details all of these things that must be present in a subpoena for it to count as a Rule 176 subpoena. But it is what you're looking for. You'd love all that process. I agree. And the way it has to be provided is not respectfully by a federal court rewriting the statute. Nor by Attorney General. Or by the Attorney General promising that henceforth, at least this Attorney General, will in his, will honor that. What's... He, I think he indicated that that is a position they've taken in writing, in a brief, to the Texas Supreme Court. Do you know the enunciation? Well, he cited things outside the record, so I don't, I don't know the answer to that. And I would also say that the issue ultimately wasn't presented is, is mooted there for sure because they withdrew the request to examine. And so it's not, the issue isn't in front of them. The issue there, just exigency then? What is their issue there? No, because you can also, in a court warrant or proceeding, revoke someone's right to do business for otherwise violating the law. Not just for violating the request to examine statute. And so their... The request to examine issue is not before the Texas Supreme Court. That's my understanding, your honor. That they're, they're arguing that there was violations of immigration law that justify revoking the, the registration for enunciation house. I do not understand that the request to examine question is still there. So there's nothing for us to hold or certify for. Enunciation house is not going to be addressing the... I watched the argument in enunciation house and I didn't see a word of reference to request to examine, as I recall sitting here today. And so we have a situation, so back to the question of can you read into the statute, can you read 176 as, though it says subpoenas covering requests to examine, though it says a subpoena has to reference the court that issued it, it could still cover requests to  examine, though rule 176.1 says you have to include the case number and there's obviously no case number, it still covers requests to examine. But in those Texas Medical Board cases, there were proceedings, but they weren't court proceedings, correct? That's... So two, two points about that. One, there was, nobody doubted, a subpoena there. It was a subpoena. You can argue about whether or not... In terms of a case name. But whether or not it was a 176 subpoena. But I think the other important point is that in Alibon and in Contropia, the court was never presented with the question. Does rule 176 apply to this subpoena? It was just assumed by everyone. There's no holding on that point. So this notion that you're in some way under the Erie Doctrine bound by that is not true because the question wasn't even addressed. It was just assumed. Well, these subpoena statutes came about long after the RTE statute. So the Texas is conceding, this is a century old statute that they acknowledge, I don't want to put the words in their mouth, has perhaps friction with Patel, and it's got to be updated. And so we could strike the word immediate, just narrow it. That's not sufficient. We would then have to additionally add the mechanism for judicial review, and that's where you're, what you're talking about right now, how difficult that would be. Add the mechanism for judicial review and statutorily promise that you can't be sanctioned while you seek that judicial review. And that last point is critical. Because all this talk about you could do 176, what they've said in their brief is they've referenced this quote acid test, quote skin in the game. What they've said is it's not judicial review for which you can't be sanctioned for noncompliance while that judicial review is occurring. They have never promised that. And in fact, on page 23 of their brief, they say exactly the opposite. They say you have to have skin in the game. They talk about the acid test. They say that you can be sanctioned for noncompliance while you seek judicial review. That's literally the exact opposite of what Patel says on page 421. Wait a minute. Just, it is Texas law. The sanction is disillusion or it could include simply arresting the officer? Both. Both. Those are the two sanctions. Yes. They've said that you have to have skin in the game. They, so page. So when Patel, Lone Steer and See speak of review prior to suffering penalties. They say more than that. They do? If you look on. That doesn't sound like pre-production. That sounds like pre-penalty. Right. But, but just pause on that. That couldn't be the case in Patel because you were going to get a criminal trial. I agree, but the language is. But there's other language in there. So page 421 of the Patel case, the court says, citing Camara, that it was unconstitutional because quote safeguards may only be invoked at the risk of a criminal penalty. Also on page 421, they noted that the hotel operator can quote only refuse to comply at his or her own peril. So the point is you can't have a, it's not sufficient under Patel for the procedures in which you get reviewed to end in. If you lose, you get sanctioned. The procedures have to be pre-compliance in which you get a chance to show why this should not be enforced. And if you lose, you then get a court order saying you must comply. And at that point, if you fail to comply, obviously you're subject to the contempt sanctions or otherwise. But you can't, it is not enough to say you can refuse to comply at your peril. Patel said exactly the opposite, that the constitutional problem was that you could only comply at your peril. And so it's not, even today, with all the hand-waving about Rule 176 and ultra-virus, they have been crystal clear in writing on page 23 of their brief that they say you have to have skin in the game. You can be sanctioned for noncompliance during the time when you're seeking judicial review. That's the position they've staked out in the skin in the game language, in the acid test language. That is inconsistent with his statement to me today, twice. I think it is, Your Honor, that they are, they're not saying that I'm entitled to obtain pre-compliance judicial review in the sense that Patel used it, meaning judicial review for which I won't be sanctioned for going to court. And you know that's their position, because that's what they did in Annunciation House. As soon as somebody ran in, even when they got a TRO five days later, the petition in response filed by the state was, they didn't comply, so you should dissolve them. They have literally not only said it on page 23 of their brief, they've acted on it. One month before my client got the request to examine, they sought to sanction someone by dissolution for seeking judicial review. Your arguments and the level of review you want wouldn't apply in the heavily regulated industry, correct? So the heavily regulated industry is a different test? I know it's a different test, but that they could get immediate entry, or you aren't committing to that? Well, they disclaimed that below. What I would say is that the heavily regulated industry test has a different requirement, which is that there has to be statutory guidance. And I guess I'm trying to look for limiting principles. So if they had credible evidence, you were about to destroy business records. Is there an exception under your theory, or do they just have to watch the smoke go up? Well, so there's not, Patel makes clear that the, when you say exception under my theory, Patel makes clear that exigent circumstances does not render the statute constitutional. Could they have, under Texas law, authority to go do, other than the request to examine statute, have authority to go in and conduct exigent circumstances searches? They may well. We haven't had a full exploration of what state law might authorize in that regard. But even then, the request to examine statute isn't going to save them, because the case law is clear, including Patel, that exigent circumstances requires that there be safeguards that limit the discretion of the officer in the field, even under exigent circumstances. And Humble Oil has said, there are no limits to this power. So they haven't even tried to defend it under the exigent circumstances test, because, as we argued below, it fails that test. I would also just offer a few other points. I saw that my colleague began his argument by referencing the injunctive action under 12.259 and says that that satisfies pre-compliance review. This is his lead argument here today. That fails for two reasons. First, not raised below. It was not raised, they say it was raised below, and they point to page 870 of the record. 870 is their objections to the magistrate's report and recommendation. This court has been clear in repeated cases that raising things for the first time in objections to an R&R does not preserve them for appellate review. So their argument that 12.259 saves the statute because it provides pre-compliance review has been waived. But secondly, it doesn't work, because let's say we have a situation where someone fails to comply with a request to examine, and the AG goes to seek an injunction. That will involve review, but the violation's already occurred. The immediate non-compliance, or the non-compliance in 20 days or whatever it is, has already occurred. The person is already now subject to revocation of their registration. The subsequent injunctive action is for the very point that there hasn't been compliance, and now it's trying to force compliance. In other words, it's because there has been a violation that could be sanctioned. So the injunctive action fails because they forfeited it, and two, it fails because it's actually not pre-compliance review that saves anyone from risk of sanction. That was, was he correct though, that is the vehicle behind the Annunciation House case? The suit was premised on an ultra-virus argument? Well, so there, yes, ultra-virus was raised, and the AG responded by saying, we have sovereign immunity. That's what they, that's what they responded in their brief. So this 12.259 argument, which was my colleague's lead argument today, fails for the two reasons I just mentioned. I'd also like to just reference briefly this idea of severance being able to save the statute. So I know I was talking before about whether Rule 176 provides the solution, and Your Honor said, couldn't we write in the language after judicial review? And the point is, that's exactly respectfully what a federal court can't do to a state statute, that you can strike language perhaps, but you can't add language. And that's effectively what they're asking you to do. They're saying, after Rule 176 judicial review, even though Rule 176 doesn't seem to apply to requests to examine, it only applies to administrative subpoenas, but they want you to add language. And that, I'm not aware of any authority to say that you can. You heard my discomfort. If it's clear to me from the transcript, they'd said, we, that's how we interpret the RTE, to the magistrate. Then he says it emphatically twice thus, and he says, it is the promise that's been made to the Texas Supreme Court. And the answer to that is, that this court can give reasonable constructions to the statute, but that's not a reasonable construction. It's not a reasonable construction because A, Rule 176 doesn't work, because this isn't a subpoena by its terms, and second, it doesn't work because you'd have to add language into the statute, not merely interpret the statute. And so for those two reasons, what they're asking you to do is what they should be asking the Texas legislature to do, respectfully. They should, the legislature's in session. They've been in session since January. This is an easy, this may well be an easy fix, but they're asking that respectfully the wrong body to bail them out on a statute that is not constitutionally written. With regard to severance, they, I just, I do want to make a critical point. I wouldn't press on severance only. That wasn't his focus. I think his, a lot of the focus now is non-justiciability. You feel like you've covered that ground? I want to talk about, I just would say on severance, briefly, it's been forfeited. It was not properly raised below. It was not identified in the statement of issues in these appellate briefs. Again, this court's case law is clear that the severance argument, both of them, immediately and the criminal penalties, it's been forfeited under this case, under this court's case law. On standing, I think the El Cisino case, City of El Cisino versus Texas, the AG actually cited A90F3164, this court in 2018. In that case, the plaintiff faced, was faced with a state statute that said Texas law enforcement agencies shall comply with an ICE detainer. And if you didn't comply with an ICE detainer, you could be subjected to criminal prosecution. And so the question was, does someone have a, have standing to challenge that? And what this court said is, there are, there is, quote, no question, end quote, that prongs two and three of the Lujan test were satisfied, meaning fairly traceable and likely redressable. So the court then turned to the question of, does someone have an injury? And in that instance, the court, this court said that, quote, potentially severe personal consequences, potentially severe personal consequences, meaning criminal prosecution. It was a pre-compliance lawsuit brought, and this court said that the potentially severe personal consequences, meaning criminal prosecution of someone who didn't comply with that state law was sufficient to create injury in fact under Lujan. So as I understand the argument refined today, it's, well, as presented in this case, this claim of yours, you don't face immediate order disclosure. And therefore, I face the, I face the unconstitutional question that, the Hobson's choice. That's my injury. It's the same injury as in Patel. My client faces the Hobson's choice. And there had never been an arrest that there was no evidence in Patel in the record. You can look at the court of appeals opinion on this. There was no evidence that anyone had ever been arrested or had ever been prosecuted. And yet the court said that there was an unconstitutional choice put on, and that's the same choice that in city of El Ciseno, that this court said. Before we finish, just in addition to the briefs, which were excellent both sides, post-Patel, are municipal ordinances like this being struck? Are you familiar? Is there scholarship that's relevant? In other words, there are a lot of equivalences to the visitation statutes. Are there any relevant cases as to other state visitation statutes that no longer work constitutionally? I know there have been other challenges under Patel. I haven't sort of surveyed. I do know that this court has found, at least in two prior opinions, exercises of 1983 actions, has found that there were violations of Patel. And so this is, in those instances, someone actually went into the premises, but that's what the statute authorizes, inspection. Thank you, Counsel. Thank you, Your Honor. Roboto argument? I want to clarify a few statements about Annunciation House. This is before the court in Annunciation House. It is correct that we have made a mootness argument. It's correct that the other side has said maybe that's not true. It is, of course, possible that the Texas Supreme Court will reach this issue in that case. And if the court wants to wait for that decision to come out, the case has already been argued, and a decision will happen sometime between now and then. But even if the RTE is still alive in that case, you've made an exigency argument, at least to the Supreme Court. It may not have been in the Quo Warranto petition, but you have. So why would the court reach the issue we're looking at? Well, I think there's a couple things that are in there. One is that this idea of immediate compliance as a matter of state law, of course, would be very relevant under the Erie Doctrine for this Court's opinion. And that issue, of course, I don't know what issue the Texas Supreme Court is going to reach and what it won't, but that issue has certainly been briefed in that case. You haven't asked us to certify any question in our case to the Texas Supreme Court. No, I haven't. I'm just saying that if— You're just informing us. Right. I'm saying if the court wishes to do so, of course, it could. The other thing that I want to clarify is we did raise the 12259 point below in objections. The rule, of course, is that you have to present something to the district court so that it knows of this. And also, the forfeiture argument they made also just got the burden of proof exactly backwards. It was their burden— And to the district court, this district court—and this cuts both ways—didn't even speak to your objections. Well, it— It's one sentence, right? It entered an order that just says we adopt the report and recommendation. So it didn't really engage with any new argument you'd made in the objection. A district court has to review de novo objections. But it didn't engage with that argument, did it? It didn't write an opinion about it. It didn't write anything about it. No, but it said we—but it said the court—the court said we reviewed the objections de novo.  So, of course, it did. It said we reviewed the objections de novo. But I take the—I take the court's point that there wasn't a separate new opinion written. But nonetheless, that gets the—that gets the analysis exactly backwards. The burden of proof— Tom Clear, you're arguing that if you made—presented the argument in the objections to the magistrate report and recommendations, that's sufficient, or that is the equivalent of presenting it to the district court? Is that what your argument is? Well, yes, but also it gets the burden backwards. The burden is, if you have a facial challenge, it's the plaintiff's burden to show why it's unconstitutional in all applications. It's not the state's burden to disprove or to show why it is constitutional in all of its applications. And I also want to be sure to briefly address the Google versus Hood point. Before you leave that, though, because I just—I still—and it may be me not understanding separate arguments, but I just can't reconcile it with what the court said in Patel, where the court said, we're only looking for a facial constitutional challenge at what you could do pursuant to the language of the statute. We are not looking at how this presented factually. You gave them 20 days. You gave them one day, grace, exigency, consent. I just am having a really difficult time understanding Texas— Well, all 259 is—I'm sorry. No. Is, of course, is, of course, a statute and is part of the statute, but the point that I want to be sure to make about does this statute mean that the only way the attorney general can do this is immediately, those aren't non-applications of the statute. Giving more time is an application of the statute, and I want to be sure to explain why. That has to be the case, because the Code Construction Act says we have to interpret all Texas law to achieve a result feasible of execution, of course, the constitutional avoidance canon, and of course, what this court has explained, which we have to have a statute that doesn't yield to absurd results. And what Spirit's argument is, is that it's illegal as a matter of state law for the attorney general to ever give anyone even one extra day of time to comply. I don't think they're saying it's legal. I think they're saying it's irrelevant. They're— Because it's not listed in the statute. No, what they're saying is that the only way that this statute can be enforced, this is Spirit's argument, is immediate compliance. That can't be correct. So I think an important hypothetical is if the attorney general showed up at Exxon Mobil's headquarters in Houston and said, here's a list of ten topics, I want all of these documents immediately, that's, of course, impossible, and a statute has to be interpreted such that it's actually possible to be complied with. That's why Spirit is wrong when they say immediate compliance means that the only way we can ever enforce this statute is for the attorney general— You know, the statute in Patel didn't have the word immediate in it, and they read it as though that's what it meant. Right, that's true. The statute at issue in Patel didn't have the word immediate in it, but the point—I think the point we're making here is the greater power of immediate compliance has to include the lesser power of telling any corporation, it's okay, we understand, this is very complicated, you can have more time. I see that my time is about to expire, so unless the court has any additional questions— Do you have anything you want to say in response to the two amicus briefs? They're internally inconsistent with Spirit's argument. Spirit says it wants offensive pre-compliance review. At least one of the amicus briefs says that these, quote, extrinsic forms of review seem unduly burdensome and very complicated. They're contradicting Spirit. I think that's the only thing I want to say on that point. Thank you very much, Counsel. The case is submitted, and that concludes our sitting today.